**SO ORDERED: December 18, 2014.**



_____
**Jeffrey J. Graham**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LESTER L. LEE, | ) | Case No. 12-90007-JJG-7A |
| | ) | |
|     Debtor. | ) | |
| _____ | ) | |
| MICHAEL J. WALRO, as Trustee of | ) | |
| the bankruptcy estate of Lester | ) | |
| R. Lee, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 14-59011 |
| | ) | |
| THE LEE GROUP HOLDING | ) | |
| COMPANY, LLC, LESTER L. LEE | ) | |
| LESTER L. LEE, BRENDA R. LEE, | ) | |
| DEBRA JO BROWN, MELINDA | ) | |
| GABBARD and LARRY L. LEE, | ) | |
| | ) | |
|     Defendants. | ) | |

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

This matter comes before the Court on Plaintiff Michael J. Walro's (the

"Trustee") *Motion for Summary Judgment* on his *Complaint* against The Lee Group

Holding Company, LLC (the "Lee Group"), Lester L. Lee ("Debtor"), Brenda R. Lee, Debra Jo Brown, Melinda Gabbard and Larry L. Lee and on the *[Cross-]Motion for Summary Judgment* filed by Brenda R. Lee, Debra Jo Brown, Melinda Gabbard and Larry L. Lee (the "Family Defendants")[1] and the Lee Group (together, the Lee Group and the Family Defendants shall be referred to herein as the "Non-Debtor Defendants," while all of the defendants together shall be referred to as the "Defendants"). The Court, having reviewed the motions and the parties' related submissions, now issues the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1.   Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Code") on January 3, 2012 (the "Petition Date").

2.   The Trustee was appointed pursuant to §§ 701 and 702(d) of the Code.

3.   The Lee Group is a limited liability company organized under the law of the State of Indiana.

4.   Pursuant to the Lee Group's Fourth Amended Operating Agreement [of] the Lee Group Holding Company, LLC (the "Operating Agreement"), Debtor was the "Manager" of the Lee Group as of the Petition Date. As manager, Debtor had "control of the company's business and affairs . . . ." pursuant to § 2.1 of the Operating Agreement.

---

[1] Brenda Lee is Debtor's spouse. Debra Jo Brown, Melinda Gabbard and Larry L. Lee are their adult children.

5. Section 3.1 of the Operating Agreement is entitled "Members." Section 3.2(D) provides that "[e]ach member shall have the voting power and a share of the principal and income and profits and losses of the company as follows:"

| Member's Name | Share | Votes |
|---|---|---|
| Debra Jo Brown | 20% | 10 |
| Brenda R. Lee | 40% | 20 |
| Larry L. Lee | 20% | 10 |
| Melinda Gabbard | 20% | 10 |
| Lester L. Lee | 0% | 51 |

6. Section 3.5 is entitled "Voting." Section 3.5(A) provides:

In addition to those listed elsewhere in this agreement, members shall be entitled to vote on the following matters and in according with the following particulars:
1. Admission of new members;
2. Election of managers;
3. Mergers and consolidation;
4. Alienation of interest of individual members;
5. Dissolution of the company.

7. Section 3.5(C) further provides that "[t]he voting rights of Lester L. Lee shall expire upon his withdrawal from the company or his demise."

8. Attached to the Operating Agreement are documents entitled "Signature Page for the Fourth Amended Operating Agreement Governing the Lee Group Holding Company, LLC" for each of the Family Defendants and another for Debtor (the "Signature Pages"). The Signature Pages were apparently executed to

3

acknowledge the withdrawal of Meegan L. Coller as a member of the Lee Group. Her signature page is also attached to the Operating Agreement.

9. On January 14, 2014, counsel for the Trustee wrote a letter to counsel for the Lee Group regarding Debtor's voting rights in the Lee Group. The letter asserted that Debtor's "non-economic interest [in the voting rights] became property of the estate subject to control by of the Trustee on the filing of the petition pursuant to 11 U.S.C. § 541."

10. Sometime after receipt of the Trustee's letter, the Family Defendants executed a Resolution (the "Resolution") whereby they purported to accept Debtor's withdrawal from the Lee Group pursuant to § 3.7 of the Operating Agreement,[2] effective December 31, 2013. The Resolution also acknowledged the termination of Debtor's voting rights pursuant to § 3.5(C) of the Operating Agreement, as well as Debtor's resignation as Manager of the Lee Group—both effective December 31, 2013.

11. Later, the Family Defendants executed an Adendum [sic] to the Operating Agreement (the "Addendum") that named Larry Lee as the new Manager of the Lee Group. The Addendum also redistributed voting rights according to the Family Defendants' ownership share.

12. The Addendum also provided that Debtor will continue to work for the Lee Group as a "consultant" and that he "shall have the right to execute any

---

[2] Section 3.7 of the Operating Agreement is entitled "Withdrawal of Members."

4

documents needed during the course of business in the absence of Larry Lee and upon approval from Larry Lee."[3]

13. The Addendum also purported to make the Lee Group liable for the members' income taxes resulting from its operations and to impose a lien on the Lee Group's assets for the tax liabilities should the Lee Group be unable to pay the taxes.

14. On April 18, 2014, the Trustee initiated an action against the Defendants seeking a determination that Debtor's voting rights were property of the estate and arguing that the post-petition actions taken to terminate Debtor's membership in the Lee Group and his attendant voting rights violated the automatic stay imposed by 11 U.S.C. § 362(a). The Trustee's Complaint also alleged that termination of Debtor's voting rights constitutes a transfer subject to avoidance under 11 U.S.C. § 549.

## Conclusions of Law

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court notes, however, that neither Debtor nor the Non-Debtor Defendants consented to the Court's entry of a final judgment. While the Court believes it has the constitutional authority to enter a final judgment in this particular matter, if a

---

[3] There is a second resolution that was also executed sometime after January 31, 2014 that provided, as does the Addendum, that Debtor will serve as a consultant to the Lee Group upon his removal as manager (the "Second Resolution"). The Second Resolution further provided that the Lee Group will continue to provide Debtor with vehicles "for his use and to reimburse any expenses incurred during the normal course of business."

reviewing court determines otherwise, then these Findings of Fact and Conclusions of Law should be treated as proposed Findings of Fact and Conclusions of Law.

2. Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

3. In his summary judgment motion and supporting submissions, the Trustee argues that Debtor's voting rights were property of the estate as of the Petition Date and that the post-petition actions taken by the Defendants to terminate those rights violated the automatic stay and that such actions should be

6

invalidated.[4] The Defendants counter that Debtor's voting rights were derivative of his role as manager, that Debtor otherwise had no property interest in Lee Group and that the actions taken to terminate Debtor's voting rights did not violate the stay.

4.  When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate. Section 541(a) of the Code defines "property of the estate" broadly to include all of the debtor's interests, legal and equitable. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 and nn. 8, 9, 103 S.Ct. 2309, 2313 and nn. 8, 9, 76 L.Ed.2d 515 (1983). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). "Every conceivable [property] interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993).

5.  Whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law; however, courts must look to state

---

[4] In his summary judgment motion, the Trustee does not separately address his claim under 11 U.S.C. § 549. The Non-Debtor Defendants' cross-motion also does not separately address the claim. In reviewing the Trustee's motion—which was not filed as a motion for partial summary judgment—the Court questioned whether the claim had been abandoned. In an effort to clarify the issue, the Court conducted a status conference with the parties on December 17, 2014. Counsel for the Trustee explained that he did not separately address the § 549 claim because he felt that it was subsumed under his § 362 claim, both in terms of the relevant facts and the requested relief. Counsel for the Non-Debtor Defendants echoed this position. Based on those representations and the holding stated herein, the Court finds no reason to separately address the claim.

7

law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Matter of Jones*, 768 F.2d 923, 927 (7th Cir.1985).

6. To determine whether Debtor's voting rights in the Lee Group are property of the estate, the Court looks to the express terms of the Operating Agreement and to relevant sections of the Indiana Business Flexibility Act, Indiana Code §§ 23-18-1-1 to 23-18-13-1 (the "Act").

7. Indiana Code § 23-18-1-5 defines "member" as "a person admitted to membership in a limited liability company under IC 23-18-6-1 and as to whom an event of dissociation has not occurred." Indiana Code § 23-18-6-1, in turn, provides in relevant part that "a person may become a member in a limited liability company . . . in the case of a person acquiring an interest directly from the limited liability company, upon compliance with the operating agreement or if the operating agreement does not provide in writing, upon the written consent of all members."

8. Based on the clear and unambiguous terms of § 3.1(D) of the Operating Agreement, the Court concludes that Debtor was a member of the Lee Group as of the Petition Date and that Debtor's voting rights were conferred as an incident to that membership. Contrary to the Defendants' argument, nothing in the Operating Report supports the Defendants' argument that Debtor's voting rights derived from his role as manager, as the provisions of the Operating Agreement relevant to management make no mention of voting rights.

8

9. The Court further notes that according to the Resolution, the Family Defendants, in purportedly terminating Debtor's membership in the Lee Group, cited § 3.7 of the Operating Agreement. That section is entitled "Withdrawal of *Members*" (italics added). Furthermore, it appears that Debtor openly acted as a member, as demonstrated by the Signature Page attached to the Operating Agreement. There is nothing in the record to suggest that the Family Defendants ever resisted that action or any other action taken by Debtor as a member.

10. Notwithstanding the clear terms of the Operating Agreement, the Defendants argue that Debtor was not a member because he did not have a right to distributions. The Court disagrees.

11. Indiana Code § 23-18-1-10 defines "interest" as "a member's economic rights in the limited liability company, including the member's share of the profits and losses of the limited liability company and the right to receive distributions from the limited liability company."

12. The mere fact that Debtor was not entitled, at least as of the Petition Date, to any distribution from the Lee Group does not mean that he had no "interest" in the company, as the Act does not limit its definition of "interest" to a members' share of profits and losses or distributions. Rather, "interest" appears to encompass *any* economic right. And, as the Trustee points, Debtor did enjoy several economic rights under the Operating Agreement.

13. As the holder of majority voting rights, Debtor could ensure that he was not removed as manager in that § 2.4 of the Operating Agreement requires a

9

"majority vote of the members of the company" for removal. As both manager and the holder of majority voting rights, Debtor had unfettered control over the Lee Group, including the right to award "incentives and bonuses" as manager and through the indemnification of expenses, legal fees and liability in any proceeding to which he may be named a party. *See Operating Agreement* §§ 2.5 and 2.6.

14. Section 3.8(G) of the Operating Agreement provides Debtor with yet another economic right. It reads:

> In the event of dissolution of marriage, or notice of a Member of his or her intention to dissolve a marriage (the "Divorcing Member"), the remaining Members, or the LLC, shall have the right to purchase the interest of the Divorcing Member for an amount equal to twenty-five percent (25%) of the book value of the LLC on the 31st day of December of the year immediately preceding the dissolution or notice of intention to resolve."

Pursuant to this provision, if Brenda were to divorce Debtor, he could purchase her 40% interest for a substantial 14% discount. Debtor would then have the largest share in the company, along with majority voting rights and control as manager. As the Trustee points out, "[i]ndeed, it would appear this particular economic benefit was uniquely tailored to apply to Brenda Lee's membership interest, since all other members of the company each own 20% shares, and hence the provision to purchase for 25% of the company's value would impose a premium rather than a discount price." *Trustee's Reply Brief* at *10.

15. While the Court agrees with the Trustee that Debtor had economic rights and, thus, an "interest" in the Lee Group as of the Petition Date, the Court emphasizes that Debtor was not required under Indiana law to have *any* economic right in the Lee Group in order to be a member. In this regard, the Defendants

10

conflate an "interest" in a limited liability company with "membership." There is, however, nothing in either the Act's definition of "member" or within Indiana case law that supports that position. The Operating Agreement plainly provides that Debtor was a member of the Lee Group, but otherwise requires nothing in the way of a capital contribution or other payment in order to be a member. Several provisions within the Act make clear that membership is not dependent on capital contributions or other payments to a limited liability company. For instance, Indiana Code § 23-18-5-2(a) makes clear that an obligation of a member to make a capital contribution may be compromised. Section 23-18-5-2(c), in identifying the various remedies that may be used if a member fails to make a required capital contribution, contemplates that a defaulting member may remain a member of the limited liability company notwithstanding the default.

16. If a limited liability company is free to compromise a member's required contribution or otherwise preserve a member's rights notwithstanding a default, it stands to reason that it may also make someone a member—by the terms of a written operating agreement—who was never required to make a capital contribution in the first place. Is this the norm in practice? Likely not, but the Court can find nothing in the Act that precludes it.

17. Case law recognizes that membership in a limited liability company may confer both economic and non-economic rights and both fall within the § 541(a)'s definition of estate property. In *Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 653 (Bankr.W.Va.2012), the bankruptcy court concluded that the debtor's

11

economic *and* non-economic rights in a limited liability company became property of the estate upon the filing of a bankruptcy petition. In so holding, the court observed that "the rights of a member may be broader than merely sharing in distributions from a LLC. Members may have non-economic rights, such as management authority." *Id*; *see also In re Virginia Broadband, LLC*, 498 B.R. 90, 94-96 (Bankr. W.D.Va.2013) (debtor's non-economic interests in LLC are property of the estate); *Klingerman v. ExecuCorp LLC (In re Klingerman)*, 388 B.R. 677, 679 (Bankr.E.D.N.C.2008) (holding that debtor's interest in an LLC—including both economic and non-economic rights—are property of the estate (citing *In re Garrison–Ashburn, L.C.*, 253 B.R. 700, 708 (Bankr.E.D.Va.2000)); *In re Liber*, 2012 WL 1835164 (Bankr.N.D.Ohio 2012) (same); *In re Ellis*, 2011 WL 5147551 (Bankr.S.D.Ind.2011) (same); *In re Hickory Ridge, LLC*, 2010 WL 1727968 (Bankr.N.D.W.Va.2010) (same).

18.    Based on these authorities, Indiana law and the clear terms of the Operating Agreement, the Court concludes that Debtor's voting rights in the Lee Group were property of the estate as of the Petition Date. Having reached that conclusion, the Court must now decide whether the Defendants violated the automatic stay when it terminated Debtor's membership and his voting rights in the Lee Group.

19.    Code § 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3); *see In re Stinson*, 221 B.R. 726, 730–31 (Bankr.E.D.Mich.1998)

12

(discussing that § 362(a)(3) is designed to prevent dismemberment of the bankruptcy estate and ensure the trustee has an opportunity to determine the rights and interest of the debtor in property).

20. The Court concludes that the Defendants violated § 362(a)(3) when they executed the Resolution. *See In the Matter of Daugherty Const., Inc.*, 188 B.R. 607, 615 (Bankr.D.Neb.1995) (concluding that LLC members voting post-petition to remove the debtor as manager and approving a new manager are actions that amount to "exercise of control over property of the estate and in violation of the automatic stay provisions" under 11 U.S.C. § 362(a)(3)); *In re McCabe*, 345 B.R. 1, 7 (D.Mass.2006) (holding that a non-debtor member amending a LLC agreement post-petition to reallocate the debtor's membership interest violates the automatic stay).

21. In an attempt to argue that the Family Defendants' actions did not violate the stay, the Defendants argue that there are two types of voting rights under the Operating Agreement. More specifically, Debtor argues that:

> [The] actions by the members of the LLC taken on behalf of the LLC could only be made by a "majority in interest of the members" and did not include Lester L. Lee. Under paragraph 2.4 of the operating agreement, any manager may be removed by a majority of votes of the members of the company. Since Lester L. Lee is not a member of the company, he would not vote on that issue, but the other members can and obviously did remove Lester L. Lee as manager. It should be very clear at this point that Lester L. Lee's voting rights of 51% apply only to routine management of the LLC and not to actions by the LLC under Indiana law that require a " majority in interest of the members.

*Debtor's Memorandum in Opposition of Motion for Summary Judgment* at *3-4; *see also Family Defendants' Brief in Opposition to the Trustee's Motion for Summary Judgment* at *5.

13

22. The Defendants' argument is simply not supported by the Operating Agreement or Indiana law. While the Act states that matters "connected with the business or affairs of the limited liability company" require the "affirmative vote, approval, or consent of a majority in interest of the members," the Act further provides that the operating agreement may provide otherwise. IND. CODE § 23-18-4-3. Here, the Operating Agreement specifies that "members" are entitled to vote on a number of matters, including the "alienation of interest of individual members." *See* Finding of Fact No. 6, *supra*. From this, the Court concludes that Debtor was entitled to vote, in the very least, on his removal as a member.

23. But the Defendants' argument is even more fundamentally flawed. Assuming that Debtor, himself, was not entitled to vote on his own removal under the Operating Agreement, the Family Defendants' acts nevertheless violated the stay and are, therefore, invalid.[5] Whether Debtor was entitled to vote on that matter as a member is irrelevant to whether the Resolution violated the stay.

24. Finally, the Court summarily dismisses the Defendants' argument that the Trustee may not step into Debtor's shoes as manager or compel Debtor to remain as manager. By his Complaint, the Trustee did not seek to step into

---

[5] Actions taken in violation of the stay have no legal effect unless and until a creditor seeks retroactive relief from the bankruptcy court pursuant to § 362(d) of the Code to validate the otherwise invalid act. *See Richardson v. Trustees of Ind. Univ.*, 497 B.R. 546, 555 (Bankr.S.D.Ind.2013). The Family Defendants have not sought to validate the Resolution or any of the other actions taken to terminate Debtor's membership rights under the Operating Agreement.

14

Debtor's shoes as manager, nor did he ask that the Court compel Debtor to remain as manager. In fact, the Trustee has repeatedly and explicitly emphasized that he does not seek that type of relief. For that reason, the Court need not determine—at least not in the context of this proceeding—whether the Code or relevant non-bankruptcy law supports either type of type of action.

25. Based on the foregoing, the Court holds that there are no genuine issues of material fact and that the Trustee is entitled to judgment in his favor as a matter of law. More specifically, the Court holds that Debtor was a member of the Lee Group as of the Petition Date; that as a member, he had voting rights pursuant to the Operating Agreement; that the Family Defendants' actions to terminate Debtor's membership and his voting rights violated 11 U.S.C. § 362(a)(3); and that such actions are invalid and without legal effect.

26. Accordingly, the Court grants the Trustee's cross- motion for summary judgment and denies the Non-Debtor Defendants' motion for summary judgment.

27. The Court will issue a Judgment consistent with the foregoing Findings of Fact and Conclusions of Law contemporaneously herewith.

###